[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was tried before the Regional Family Trial Docket, on a referral from the New London Judicial District, on January 6th-8th 2003. The Plaintiff, Defendant, Robyne Diller, Ph.D., (the custody evaluator) and the Administrator of the State Teachers Retirement Board testified and numerous exhibits were introduced. On February 7th, 2003, Plaintiff filed a Motion to Reopen Evidence, and on February 13th, 2003, filed an amended motion, which was heard and granted by the court on February 25th, 2003. The court has considered all of the credible evidence presented to it and carefully considered the respective criteria for orders of custody, visitation and access, child support, health insurance, payment of children's medical expenses, alimony, property settlement, division of debt and award of counsel fees. The court makes the following findings of facts and orders:
The parties were married on August 24, 1985 in Waltham, MA. The court finds that it has jurisdiction over the marriage. One of the parties has lived in the State of Connecticut for more than one year prior to bringing this action. The following minor children have been born to the parties since the date of the marriage:
Jennifer Victoria Neri Lorette, date of birth December 15, 1990; and
Michelle Marie Neri Lorette, date of birth September 29, 1993.
No other minor children have been born to the Wife since the date of the marriage. The parties are not receiving state assistance. The court finds that the marriage between the parties has broken down irretrievably and there is no reasonable prospect of reconciliation.
On January 7, 2003, the parties entered into a Stipulation-Parenting Plan that was approved and made an order of the court. Subsequent to the trial, the minor child Jennifer Lorette was killed in a tragic accident. The court granted the Plaintiff's Motion to Reopen the evidence, for the CT Page 3278 purpose of the submission of amended Child Support Guideline calculations and the allocation of the costs of the minor child's funeral expenses, on February 25th, 2003.
FINDINGS OF FACT:
The wife is 42 years old and in good health. She received her undergraduate degree from the University of New Hampshire in 1982 and her Masters Degree in Speech Pathology from Western Michigan in 1984.
In 1984, she was employed by the Easter Seals Rehabilitation Center and has been employed by the public school system since 1987. Ms. Neri has been employed by the Colchester Board of Education since 1996 as a Speech Language Pathologist and earns approximately $60,000 per year.
Mr. Lorette is 46 years old and in good health. He has an Associate degree in Environmental Science, an undergraduate degree in Water Resources and has earned 3/4 of the required credits for a Masters degree in Environmental Science.
Prior to and during the early part of 1983, Mr. Lorette was employed as a photojournalist. The Defendant was employed by Fred Hurst Associates as an environmental engineer from 1985-87. He was employed by UTC as an environmental engineer from 1987 to 1993. Mr. Lorette was employed by Safety Klean as a Northeast Regional Manager from 1993-97. In 1997, the Defendant purchased a Subway franchise and operated it for approximately one year. From 1998-99, Mr. Lorette was self-employed/unemployed. After receiving training from the State Department of Labor, he was employed as a Network Administrator at the Travelers from 1999-2002. He returned to Safety Klean as Director of Technical Services from 2001 to January 2002 when he was laid off. Mr. Lorette began his present employment with Mann Environmental as Manager of Compliance in April 2002. His current salary is approximately $75,000 per year.
The couple attempted marriage counseling on two occasions without success. The first attempt was in 1995 for approximately 6 months and the latter attempt was a year before the Wife filed for divorce. Mr. Lorette testified that both parties simply stopped going in 1995 and that the second attempt was terminated by the Wife's decision to file for divorce.
Ms. Neri testified that the marriage began to deteriorate once the couple began to have children. After the couple's daughter Michelle was born, Mr. Lorette was employed in a job that required extensive travel. CT Page 3279 Ms. Neri complained about the travel and her Husband's failure to leave his itinerary so she could contact him in the event of an emergency. On one occasion, a dog bit Jennifer and Ms. Neri was unable to reach her Husband before surgery. The Plaintiff testified that her Husband failed to leave her his business travel itinerary even after the dog bite incident.
Mr. Lorette was perpetually dissatisfied with his jobs as is evidenced by his work history. During his period of unemployment, Ms. Neri testified that he stopped looking for a job after several months and watched television most of the time. During this period, she testified that he did not participate in family vacations she took with the girls and that she was responsible for the family's needs both financially and at home.
Ms. Neri attributed the breakdown of the marriage to the Husband's period of unemployment, selfishness, unwillingness to take responsibility and emotional abuse. She cited a number of examples over the course of the marriage as evidence: his failure to take his daughters' pet hamster to the vet, the fact that he was not able to help the family prepare for trips and outings, his period of unemployment, and his anger when the couple could not afford the car he wanted to buy, which resulted in his not speaking to his Wife for a month.
The day before he was served with the divorce papers, he withdrew $32,000 from the family's joint savings account. Ms. Neri testified that this account held $11,000 that she had inherited from her father via 3 checks from her mother. Mr. Lorette disputed this testimony and claimed the only funds the couple received from the Plaintiff's family was a check for $4,000 to the couple jointly, that was intended to pay for leather furniture. Mr. Lorette testified that he used $5,000 to retain an attorney, $3,000 to cover unspecified personal expenses, and lost $3,000 on a deposit for a home when he was laid off from Safety Klean and unable to qualify for a mortgage. As of the date of the trial, $18,200 remained. The pendente lite orders classified $20,000 of the $32,000 as an advance property settlement. Mr. Lorette testified that Ms. Neri removed $7,000 from joint accounts just prior to filing for divorce. Ms. Neri testified the money was used to pay for the leather furniture the couple purchased and for a deposit on orthodontic work for one of the children.
The Husband denied he was uninvolved with the children and testified he was a soccer coach for several years and served as an assistant coach for three different sports. However, Dr. Robyne Diller, clinical psychologist, testified at trial that the defendant husband's relationship CT Page 3280 with his two children was in dire need of rehabilitation. The oldest child, Jennifer, had been refusing to visit her father. Additionally, the youngest child, Michelle, also had a difficult relationship with her Father as evidenced by his inappropriate attempts to discipline the children during the interactional portion of the custody evaluation. This testimony substantiates the testimony of the plaintiff wife that the defendant husband had difficulty caring for the children without her assistance.
Mr. Lorette testified that the marriage broke down because he gave his Wife too much power over their finances early in the marriage. When asked how he contributed to the breakdown of the marriage the Defendant stated he was not the neatest guy in the world and he did not live up to his Wife's expectations. He denied that he was unemployed for more than 8 months and testified that he began a venture with Compliance Partners to be the sole supplier of a product on the East Coast. He also testified that this venture never paid him more than his out of pocket expenses. He did admit he had no reportable earnings in 1998 and made between $7,000 to $9,000 in 1999. Mr. Lorette claimed that his Wife never complained about his unemployment or job changes during the marriage.
Mr. Lorette is the trustee of a Paine Webber account established through the probate court to manage the funds Jennifer received as a result of a lawsuit brought as a result of the dog bite incident referenced above.
The court finds that the defendant husband bears the bulk of the fault for the breakdown of the marriage.
 ORDERS
After considering all of the statutory criteria set forth in General Statutes Section 46b-84 as to support of a minor child, Section 46b-215a-1
et. seq., Regs. Conn. State Agencies, as to child support, 46b-62 as to counsel fees, 46b-66a, as to conveyance of real property, 46b-81, as to assignment of property and transfer of title, 46b-84, as to medical insurance for the minor child and 46b-56 as to custody and visitation, together with applicable case law and the evidence presented here, the Court hereby enters the following orders:
1. Dissolution of Marriage:
A decree dissolving the marriage, on the grounds of irretrievable breakdown, shall enter on March 12, 2003. CT Page 3281
2. Custody and Visitation:
The court finds that the agreement of the parties dated January 7, 2003, regarding custody and visitation is in the best interest of the minor child and it is incorporated herein by reference. The court shall retain jurisdiction over this matter for the next year to monitor progress of the parenting plan and maintain continuity of the court orders regarding custody and visitation.
3. Child Support:
The defendant father shall pay child support, according to the Connecticut Child Support Guidelines, of $180.00 per week. Within one week of the day of judgment, the defendant husband shall pay the $136.90 support arrearage he owes the plaintiff for the month of December 2002, as well as his support for January 2003, which had not been paid as of the date of the trial.
The obligations of support and maintenance of the minor child shall terminate when the child attains the age of eighteen (18) years, marries, dies, becomes employed full time being no longer enrolled in high school, or ceases to reside with the Wife under circumstances where the Wife is no longer furnishing the child's support or becomes otherwise emancipated, whichever occurs first.
Notwithstanding that the child has reached the age of eighteen (18) years, if the child is a full time high school student and continues to reside with the Wife, the Husband shall continue to pay child support as specified above, until the child completes the twelfth (12) grade or attains the age of nineteen (19) years, whichever occurs first.
4. Educational Support Order:
The court shall retain jurisdiction over this file for the purposes of entering an educational support order, pursuant to Conn. Gen. Stat. § 46b-66, effective October 1, 2002 [formerly P.A. 02-128].
5. Life Insurance:
Both parties shall maintain their existing life insurance policies sufficient to secure their child support obligation, including their obligation for educational support. Said policies shall list the child as irrevocable beneficiary and shall not be encumbered. Proof of said policies shall be provided to the other party on a yearly basis. The life insurance shall have a minimum face value of $100,000.00 CT Page 3282
6. Alimony:
The court finds that both parties are in good health, educated, fully employed and neither party shall pay alimony to the other.
7. Medical Insurance:
(a) The plaintiff wife shall maintain the medical (and dental) insurance coverage now in effect, or its equivalent, for the benefit of the minor child until said child (i) dies, (ii) marries, (iii) becomes wholly emancipated, or (iv) attains the age of eighteen (18) years.
If the aforesaid insurance becomes unavailable to the plaintiff wife and equivalent insurance is available to the defendant husband through his employer at his employer's expense, he shall maintain such coverage for the same period as heretofore set forth. If insurance is not available through either party's employment, then the defendant Husband shall obtain medical insurance with the premium divided equally between the parties.
(b) The plaintiff wife shall provide the defendant husband with a complete benefits description of the medical (and dental) insurance policy and the parties shall, at all times, be required to adhere to the provisions of any managed care features, utilization review programs, and other limitations and exclusions of coverage contained under the plan when seeking treatment for the children. The defendant Husband shall cooperate with the plaintiff Wife in the event of any claims made pursuant to the insurance program above provided pursuant to the Connecticut General Statutes § 46b-84 (e). The defendant husband shall have the right to process any claims in the plaintiff wife's name and the plaintiff wife shall authorize the insurance company or health association to make all payments and drafts payable directly to the plaintiff Wife for the benefit of the children when appropriate. The plaintiff wife shall at all times keep the defendant husband informed of the policy number and claims procedures.
(c) All unreimbursed medical expenses (including, but not limited to, psychiatric, psychological, optometric, orthodontic, etc.) for the child shall be divided, as per the Child Support Guidelines, with the plaintiff wife paying 55% and the defendant husband paying 45%, after the first $100.00 is paid by the wife.
(d) In the event that either party, either through willful misconduct or ignorance, triggers a plan limitation, exclusion or penalty (i.e. a CT Page 3283 reduction in plan reimbursement levels) as a result of (a) seeking medical treatment from an out-of-network health care provider; (b) utilizing a provider that charges above the plan's reasonable and customary limitations, or (c) authorizing medical treatment that is otherwise expressly limited or excluded under the terms of the plan, that party will be responsible for paying 100% of such unreimbursed expenses. The parties may mutually agree in writing to allocate such out-of-pocket costs in another manner to assure that the best interests of the child is satisfied from a health perspective.
(e) The defendant husband shall bring the outstanding balance, due the children's therapist, of $1,000.00, current within 30 days, which pendente lite order shall not merge in the judgment.
8. Property Settlement:
The defendant husband shall transfer his interest in the residence at Stanavage Road, Colchester, Connecticut, to the plaintiff wife by Quitclaim Deed within 14 days of the date of judgment. The Wife shall hold the husband indemnified and harmless from the mortgage, taxes, insurance and utilities for said real estate. The Wife shall use her best efforts to refinance the property, within 60 days from the date of judgment, to remove the defendant husband's name from the mortgage. If the Wife is unable to secure 30 year financing at an interest rate of 6% or less, or is turned down in writing by two lending institutions, she shall be relieved of her obligation to refinance the family home.
The defendant husband shall keep as his sole property the following assets:
Money removed from Joint Account* $32,000.00
Joint Paine Webber Account $ 7,348.00
Savings Bonds $ 1,000.00
 Husband's Liberty Bank Savings $ 4.000.00 ---------- TOTAL $44,348.00
9. Motor Vehicles:
The parties shall be entitled to their respective motor vehicles and shall hold the other harmless and indemnified from all outstanding loans, personal property taxes and registration. If it is necessary to transfer title and/or registration to either or both of the vehicles, the parties shall complete the necessary paperwork within 30 days of the date of judgment.
10. Personal Property:
The attached arbitration order of December 14, 2001, is incorporated herein.*
11. Debts:
Each party shall be solely responsible for the debts shown on their respective financial affidavits or other debts in their name or incurred on their behalf, except the funeral expenses for the minor child and attorneys fees for the Attorney for the Minor Children and Guardian Ad Litem which are outlined below.
(a) Debts not listed on the parties' respective financial affidavits shall be considered separate debts of the party not listing said debts.
(b) Assumption of indebtedness by each party shall be considered an obligation for the support and maintenance of the other; payment of said debts shall not be considered deductible as alimony or maintenance for income tax deductibility by the payor, or includable by the payee.
(c) Said assumption of indebtedness, likewise, shall not be considered dischargeable in any bankruptcy proceeding filed by either party, so as to allow a third-party creditor to claim against the non-bankrupt party to this Agreement.
(d) Any funeral expenses of the minor child Jennifer, not covered by her estate, shall be divided by the parties equally and paid within 30 days of the date of notice from the Probate Court that the minor's estate is insolvent.
12. Attorneys Fees:
The parties shall each be solely responsible for their own attorney fees. Each of the parties shall pay their outstanding share of fees of CT Page 3285 the Attorney for the Minor Children and Guardian Ad Litem within 30 days of the date of judgment.
13. Pensions, IRA Accounts, 401K Accounts and Deferred CompensationAccounts:
The parties shall divide all pensions, IRA accounts, 401K accounts and deferred compensation accounts as listed on their respective financial affidavits, with the wife receiving 60% and the husband receiving 40% by means of a Qualified Domestic Relations Order or Domestic Relations Order, if needed. The court is making this unequal division because the plaintiff wife participated in the State Teachers Retirement System and, according to the testimony of the plan administrator, William Sudol, she will not be eligible for social security benefits, as will the defendant husband. The parties shall equally share the cost of preparing the necessary documents. The division of the retirement accounts shall be completed within 45 days of the date of judgment. Each party shall be awarded joint and survivorship benefits to protect each party in the event of the other's death.
14. Income Tax Exemption:
The Husband shall take the child as a dependent for income tax purposes every year as long as his child support and unreimbursed medical expense payments are current.
The defendant husband had a child support deficiency as of 12/31/02; therefore, the plaintiff wife shall be entitled to the dependency exemptions for 2002.
15. Interim Post-Judgment Orders:
These orders shall be considered interim postjudgment orders in the event that an appeal is taken by either party.
16. Jurisdiction:
The Regional Family Trial Docket shall retain jurisdiction over this case for a period of one year from the date of judgment; any motions regarding custody and/or visitation shall be filed with the Regional Family Trial Docket.
17. Miscellaneous:
Each party shall sign any necessary documents to effectuate the CT Page 3286 orders contained herein.
 By the Court, Holly Abery-Wetstone, Presiding Judge